UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHIRLEY K. ST. GERMAIN,<br>      *Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>      *Defendant.* | No. 3:20-cv-105 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shirley K. St. Germain filed suit against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671, *et seq.* ("FTCA"). St. Germain's complaint alleges negligence based on her allegation that she tripped and fell on a curb leading from a parking lot to a sidewalk in front of the Old Saybrook Post Office. The Government moves for summary judgment on this claim. ECF No. 31. For the reasons set forth below, the Government's motion for summary judgment is DENIED.

**I.      Factual Background**

The following facts, which are taken from the parties' Local Rule 56(a) statements and supporting exhibits, are undisputed unless otherwise indicated.

The United States Postal Service ("Postal Service") maintains a Post Office location in a leased spaced located at 36 Main Street, Old Saybrook, Connecticut (the "Post Office"). ECF Nos. 31 at ¶ 1;[1] 39 at ¶ 1. The Postal Service leases this premises from Apportionment Defendant George C. Field Company, Inc. ECF Nos. 31 at ¶ 2; 39 at ¶ 2.

---

[1] This Ruling cites ECF page numbers throughout. The Government's Local Rule 56(a)1 statement begins on page 15 of ECF No. 31. St. Germain's Local Rule 56(a)2 statement begins on page 7 of ECF No. 39.

1

On March 3, 2017, St. Germain fell outside the Post Office.  ECF Nos. 31 at ¶ 3; 39 at ¶ 3.  She was walking toward the Post Office Entrance, taking a route that involved crossing a parking lot not on Post Office property and then stepping up onto a sidewalk on Post Office property.  ECF Nos. 31 at ¶ 5; 39 at ¶ 5; 31-3 at 22.  This was the route St. Germain normally took to visit the Post Office, and she testified at her deposition that she had been to the Post Office "a couple hundred times."  ECF Nos. 31 at ¶ 5; 39 at ¶ 5; 31-4 at 7.

St. Germain testified at her deposition that she "tripped over" the step up to the sidewalk, ECF No. 31-4 at 8 ("There's a step there and that's what I tripped over."), although she also stated, in response to questioning from defense counsel as to whether she "specifically recall[ed] [tripping over the step] at this point," that she was "trying real hard" to recall, *id*.  Neither party has submitted admissible testimony or statements from witnesses who observed the fall.[2]

St. Germain lost consciousness during or following her fall, then came to with "blood on [her] mouth," while "face-down" on the ground in the parking lot, and with a doctor shaking her.  ECF Nos. 31-4 at 8-9; 31 at ¶ 6; 39 at ¶ 6.  There was a pool of blood on the ground in the parking lot to the right of the step up to the sidewalk.  ECF Nos. 31 at ¶ 8; 39 at ¶ 8; 31-3 at 11.

An ambulance with emergency medical technicians then arrived at the scene and shortly afterward transported St. Germain from the parking lot to the emergency room at Middlesex Hospital.  ECF Nos. 31 at ¶ 9; 39 at ¶ 9.  St. Germain's ambulance record states: "Pt states she does not remember what happened."  ECF Nos. 31 at ¶ 12; 39 at ¶ 12.  Her emergency room

---

[2] St. Germain points to the following language in the police report prepared following the incident as support for her claim that she tripped on the step: "Witnesses stated that St. Germain[] tripped over the raised curb transitioning from the driveway to the sidewalk and fell from a standing position onto her face."  ECF No. 39-1 at 3.  But she cannot use this language as support because it is inadmissible hearsay.  *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted *but that statements made by third persons under no business duty to report may not*.") (emphasis in original); *see* Fed. R. Civ. P. 56(c)(2), (c)(4) (requiring material supporting summary judgment briefs to be admissible in evidence).

record states: "[St. Germain] fell to the right just after she apparently attempted to cross onto the curb. Her friend describes the area and a small lip curb off of the parking lot that they presume she tripped on. They point to her right leather boot and noted that the toe is also scuffed up which it is. She says that she thinks that she tripped on the curb and landed on her face and might of been knocked out briefly." ECF No. 33 at 3. The "friend" described in the medical records did not witness the fall; she arrived at the parking lot afterward to help St. Germain. ECF Nos. 31 at ¶ 15; 39 at ¶ 15. Those records also provide: "[St. Germain] is not exactly clear how she fell. There is a question as to whether or not she tripped over a small step which was right in the location that she fell. She does not recall the mechanism of the fall or the fall itself." ECF Nos. 31 at ¶ 13; 39 at ¶ 13.[3]

One of St. Germain's medical providers, considering other possible causes of the fall, noted that "she could be anemic" due to a medical procedure she underwent three days before. ECF No. 33 at 5. However, the medical provider indicated later in the same paragraph: "[g]iven [St. Germain's] ability to [ambulate without any symptoms] I doubt significant anemia at this point." *Id.* The records also note that the fall "does appear to be a mechanical fall." *Id.* at 2. In the year proceeding the date of her fall, St. Germain was brought to the emergency room on at least two other occasions following falls from standing height. ECF Nos. 31 at ¶ 20; 39 at ¶ 20.

St. Germain has presented evidence—in the form of a report prepared by Mark W. Tebbets—that the step on which she claims to have tripped was unsafe and did not conform with

---

[3] These statements are likely admissible as statements made for medical diagnosis or treatment. Fed. R. Evid. 803(4).

the Connecticut Building Code or other relevant standards.[4] That report offers the following conclusions:

> It is my opinion, based on a reasonable degree of Building Code safety certainty, based on my years of training, education and experience as a Master Code Professional in the field of Building Code, Health, Safety, and Welfare, that the following items contributed to this fall.
>
> 1. Failure to properly ramp the change in elevation, in violation of the Building Code.
>
> 2. Failure to provide a riser height which met the minimum height standard, in violation of the Building Code.
>
> 3. Failure to eliminate the short single step as recommended by the ASTM[5] Standard.
>
> 4. Failure to adequately identify the change in elevation with warning signs or contrasting colors as recommended by the ASTM Standard.
>
> 5. Failure to adequately warn pedestrians of the dangerous conditions associated with this change in elevation.

---

[4] St. Germain also argues that evidence that the Post Office later painted the step yellow supports her claim that the step is unsafe, but this evidence is inadmissible except to prove the Post Office's control over the step, which the Post Office does not dispute.  *See* Fed. R. Evid. 407.
[5] The report does not indicate what "ASTM" stands for.  The Court assumes that it refers to the American Society for Testing and Materials.

>  6. Failure to provide a proper accessible route between adjacent buildings, in violation of the Building Code and ICC/ANSI[6] Standard.

ECF No. 31-5 at 6-7.  Tebbets's report also concludes that "[a] small change in elevation, such as this step [up to the Post Office sidewalk], is extremely difficult for a pedestrian to see as they approach."  *Id.* at 6.

## II. Legal Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted).  In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).  "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## III. Discussion

---

[6] The report does not indicate what "ICC/ANSI" stands for.  The Court assumes that it refers to the International Code Council and American National Standards Institute.

A. Applicable Law

St. Germain brings her negligence action pursuant to the FTCA. "The applicable law to a claim against the Government under the FTCA is the law that the state where the tortious incident took place would apply 'in like circumstances involving a private defendant.'" *Silverman v. United States,* No. CV 04–5647(ETB), 2008 WL 1827920, at *12 (E.D.N.Y. Mar. 28, 2008) (quoting *Caban v. U.S.,* 728 F.2d 68, 72 (2d Cir.1984)); *Davis v. United States,* 430 F. Supp. 2d 67, 73 (D. Conn. 2006) ("Under the FTCA the government's liability is determined by the application of the law of the place where the act or omission occurred."). Connecticut law would apply if St. Germain brought a negligence action against a private defendant, so Connecticut law applies to this action.

Under Connecticut law, "[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Baptiste v. Better Val-U Supermarket, Inc.*, 811 A.2d 687, 690 (Conn. 2002). In this case, the Government does not dispute that St. Germain was a business invitee and that the Government therefore owed her a duty to maintain its premises in a reasonably safe condition. ECF No. 31 at 6; s*ee also Kelly v. Stop and Shop, Inc.*, 918 A.2d 249, 255 (Conn. 2007).

B. Application to Facts of this Case

The Government first argues that St. Germain has presented no evidence from which a reasonable factfinder could infer that her fall was caused by the step up to the Post Office sidewalk. ECF No. 31 at 6-9. I disagree. St. Germain has presented evidence that she informed emergency room medical providers that she "th[ought] that she tripped on the curb and landed on her face," and that she noted that the right toe of her boot was "scuffed up." ECF No. 33 at 3. St. Germain also testified at her deposition that she "tripped over" the step up to the sidewalk. ECF No. 31-4 at 8. A reasonable factfinder could infer from this evidence that St. Germain tripped over the step. While the Government points to evidence indicating that St. Germain fell

6

in the adjacent parking lot before reaching the step and that "non-step related factors" such as St. Germain's medical condition may have caused the fall, this evidence simply creates a question of fact regarding the cause of the fall; it does not preclude the inference that the step was the cause.

The Government next argues that St. Germain has failed to present evidence from which a reasonable factfinder could infer that it breached any duty of care owed to her. ECF No. 31 at 9-13. Under Connecticut law, a possessor of land has a duty to warn an invitee like St. Germain of dangers that the invitee "could not reasonably be expected to anticipate." *Warren v. Stancliff*, 251 A.2d 74, 76 (Conn. 1968), but has "no duty to warn an invitee of a dangerous condition when the invitee has actual knowledge of the condition." *id.* The Government argues that the evidence in the summary judgment record shows that St. Germain had "actual knowledge" of the step because its presence was "open and obvious" and because it was part of her ordinary route into the Post Office. ECF No. 31 at 10. St. Germain has, however, presented evidence that the step was not "open and obvious" but instead "extremely difficult for a pedestrian to see as they approach[ed]" it. ECF No. 31-5 at 6. And while the evidence that St. Germain frequently took this route into the Post Office could support an inference that she was aware of the step and the hazard it may have presented on the day of her fall, it does not compel such an inference.

The Government also argues that St. Germain has failed to present evidence that could support an inference that the step was "inherently unreasonably dangerous, meaning the Defendant breached its duty of care by failing to undertake some other reasonable, cost justified precaution apart from warning the Plaintiff of the step." ECF No. 31 at 10. But St. Germain has presented the report of Mark Tebbets, which details the ways in which the step's construction did not comply with the Connecticut Building Code or other relevant guidelines and described it as difficult to see and a "danger[] . . . to pedestrians." ECF No. 31-5 at 6. The Government

7

acknowledges that while the Building Code and other guidelines may not be binding on the Post Office, they may still inform the factfinder's conclusions regarding what constituted reasonable care.  ECF No. 31 at 12; *see also McNaught v. United States*, No. 07cv10713-NG, 2009 WL 10729590, at *5 (D. Mass. Dec. 22, 2009) ("[B]uilding codes are relevant to the . . . task of determining whether a landowner has taken all reasonable, cost-justified precautions to protect against injury to others, regardless of whether the codes explicitly apply to the landowner or not.").  It argues, however, that St. Germain has failed to present any evidence of "what, if any, reasonable cost alt[]eration the Post Office should have made to reduce the risk of injury to its patrons including Plaintiff."  ECF No. 31 at 13.  But the Tebbets report states that the step "should have been eliminated and replaced with a ramp," ECF No. 31-5 at 3, and it also quotes guidelines suggesting provision of "obvious visual cues" such as "[h]andrails, delineated nosing edges, tactile cues, warning signs, contrast in surface colors, and accent lighting" if elimination of such a step is not possible, *id.* at 4.  This constitutes evidence of reasonable alterations the Post Office could have made to make the parking-lot-to-sidewalk transition safer.

Thus, I conclude that St. Germain has presented evidence from which a reasonable factfinder could infer that she tripped on the step up to the Post Office sidewalk and that the Government breached the duty of care it owed her.

## IV.   Conclusion

For the reasons set forth above, the defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         March 3, 2022